UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TIMOTHY BARNABY,

                          Plaintiff,

v.                                                    8:17-CV-0399
                                                      (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                OF COUNSEL:

SCHENIDER & PALCSIK                          MARK A. SCHNEIDER, ESQ.
  Counsel for Plaintiff
57 Court St.
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.                  JOHANNY SANTANA, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 22.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Timothy Barnaby

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 15, 18.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1962.  (T. 83.)  He completed the eighth grade.  (T. 174.) Generally, Plaintiff's alleged disability consists of chronic obstructive pulmonary disease ("COPD"), diabetes, asbestos, headaches, gastro esophageal reflux disease ("GERD"), arthritis, high blood pressure, and high cholesterol.  (T. 174.)  His alleged disability onset date is April 1, 2013.  (T. 83.)  His date last insured is December 31, 2016.  (*Id.*) He previously worked in manufacturing and auto repair.  (T. 175.)

### B.    Procedural History

On July 10, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act.  (T. 21.)  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On July 20, 2016, Plaintiff appeared before the ALJ, Dale Black-Pennington.  (T. 34-82.)  On November 17, 2016, ALJ Black-Pennington issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 18-33.) On March 31, 2017, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 23-28.)  First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2016 and Plaintiff had not engaged in substantial gainful activity since April 1, 2013.  (T. 23.)  Second, the ALJ found that Plaintiff had the severe impairments of COPD, diabetes, high blood pressure, high cholesterol, GERD, and arthritis.  (*Id.*)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 23-24.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 C.F.R. [§] 404.1567(b)[1].  [Plaintiff] should avoid concentrated exposure to known respiratory irritants and extreme temperatures.  He is able to occasionally climb ramps and stairs but should avoid concentrated exposure to humidity and wetness.  He is unable to climb ladders, ropes, and scaffolds.

(T. 24.)  Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 26-28.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes seven separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to follow the treating physician

---

[1]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

rule.  (Dkt. No. 15 at 19-22 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ erred

in her step two determination.  (*Id.* at 22-23.)  Third, Plaintiff argues the ALJ erred in

assessing Plaintiff's credibility.  (*Id.* at 23-30.)  Fourth, Plaintiff argues he is disabled

under "the Grids."  (*Id.* at 30.)  Fifth, Plaintiff argues he is disabled due to a combination

of his impairments; his impairments meet or equal various Listings; he is disabled due to

pain; and the ALJ failed to give proper weight to limitations from his diabetes.  (*Id.* at 30-

36.)  Sixth, Plaintiff argues the ALJ erred in her step five determination.  (*Id.* at 36-38.)

Seventh, and lastly, Plaintiff argues remand is necessary based on new and relevant

evidence submitted to this Court.  (*Id.* at 38-42.)

### B.    Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues the

ALJ correctly determined Plaintiff's severe impairments at step two.  (Dkt. No. 18 at 5-8

[Def.'s Mem. of Law].)  Second, Defendant argues the ALJ's RFC for light work with

additional limitations was supported by substantial evidence in the record.  (*Id.* at 8-12.)

Third, and lastly, Defendant argues Plaintiff has provided no legal basis to consider

additional evidence.  (*Id.* at 12-15.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.

Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

For ease of analysis, Plaintiff's arguments will be address in a consolidated manner.

### A.  The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).[2] The plaintiff

---

[2]    Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier Regulations and SSRs.

bears the burden of presenting evidence establishing severity.  *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 404.1512(a).  Although the Second Circuit has held that this step is limited to "screen[ing] out *de minimis* claims,"  *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe."  *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.' "  *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).  In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis."  *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").  It has been well

---

established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

Plaintiff asserts the ALJ erred in her step two determination because she failed to find his learning disability, anxiety, and headaches severe impairments. (Dkt. No. 15 at 22-23 [Pl.'s Mem. of Law].)

Plaintiff fails to establish that his "learning disability" was a severe impairment. In support of his argument that he has a learning disability, Plaintiff states he dropped out of school in the eighth grade and was in special education classes. (Dkt. No. 15 at 22-23 [Pl.'s Mem. of Law].) The ALJ concluded, at step four, Plaintiff had a "limited education and [was] able to communicate in English." (T. 27.) A limited education is consistent with an 8th grade education. *See* 20 C.F.R. § 404.1564(b)(3) (a 7th grade through 11th grade level of formal education is a limited education). Education records provided by Plaintiff consist of a withdrawal form indicating Plaintiff failed his course work and was absent a significant amount of time. (T. 26, 259.) However, as stated by Defendant, Plaintiff fails to present evidence or diagnoses related to a learning disability. (Dkt. No. 18 at 5 [Def.'s Mem. of Law]); *see* 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.").

Not only does Plaintiff fail to establish that he was diagnosed with a learning disorder, diagnosis alone does not establish severity. The "mere presence of a disease

or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe.  *McConnell v. Astrue,* 2008 WL 833968, at *2 (N.D.N.Y. 2008) (citing *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y.1995)).  The ALJ properly determined, based on Plaintiff's testimony and education record, Plaintiff had a "limited education."  However, Plaintiff fails to establish he had a severe impairment of a learning disability.  Therefore, the ALJ did not err in failing determine Plaintiff had a severe impairment of a learning disability.

Similarly, no doctor diagnosed Plaintiff with anxiety; therefore, Plaintiff fails to establish that his anxiety was a severe impairment.  Two nurse practitioners assessed anxiety; however, the Regulations require a diagnosis by an acceptable medical source in order for a condition to be a medically determinable impairment.  20 C.F.R. § 404.1508.  Nurse practitioners are not acceptable medical sources.  *Id.* § 404.1513(a), (d)(1).  Therefore, Plaintiff fails to establish that his anxiety is severe, because Plaintiff fails to prove his anxiety is a medically determinable impairment diagnosed by an acceptable medical source.

Plaintiff makes the conclusory assertion the ALJ erred by not ordering a consultative psychological or cognitive exam.  (Dkt. No. 15 at 36 [Pl.'s Mem. of Law].)  The relevant Regulations stipulate that a consultative examination is ordered at the Administration's request, on an individual case basis, and when appropriate.  *See* 20 C.F.R. § 404.1519; *see also id.* § 404.1517.  If the evidence in the record is sufficient to render a decision on the plaintiff's disability, an ALJ is not required to order a consultative examination.  *See id.* § 404.1517; *see Kameisha v. Colvin*, 100 F. Supp. 3d

200, 208 (N.D.N.Y. 2015).  Therefore, the ALJ did not commit *per se* legal error in failing to order a consultative examination.

Plaintiff asserts his headaches are a severe impairment; however, Plaintiff provides no evidence in the record to support his conclusory assertion.  (Dkt. No. 15 at 23 [Pl.'s Mem. of Law].)  It is not the job of a court to "comb the record" for evidence that supports Plaintiff's assertions.  *Johnson v. Colvin*, No. 13-CV-6319, 2014 WL 1394365, at *6 (W.D.N.Y. Apr. 9, 2014); *see Denno v. Comm'r of Soc. Sec.,* No. 1:16-CV-1411, 2017 WL 5496069, at *8 (N.D.N.Y. Oct. 6, 2017), *report and recommendation adopted,* No. 1:16-CV-1411, 2017 WL 5484662 (N.D.N.Y. Nov. 14, 2017).

Therefore, Plaintiff fails to show that his learning disorder, anxiety, and headaches are severe impairments and it is recommended that the ALJ's step two determination be upheld.

### B.  The ALJ's Step Three Determination

If the ALJ determines a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1 ("the Listings").  20 C.F.R. § 404.1520(a)(4)(iii)(d).  The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity.  *Id.* § 404.1525(a).  If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement in 20 C.F.R. § 404.1509, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience.  *Id.* § 404.1520(d).

At step three, the ALJ determined Plaintiff's impairments, or combination of impairments, did not meet or medically equal a Listing. (T. 23-24.) The ALJ specifically examined Listings §§ 1.02 and 4.00. (*Id.*) Plaintiff does not assert the ALJ erred in her conclusion he does not meet or equal Listing §§ 1.02 or 4.00, nor does Plaintiff assert his COPD and/or asbestosis meets or equals Listing § 3.02. (Dkt. No. 15 at 33-34 [Pl.'s Mem. of Law].) Plaintiff however, asserts his COPD, in combination with his other impairments, equals Listing § 3.02(A): Chronic Respiratory Disorders. (*Id.* at 34.) Plaintiff further asserts his learning disability meets or equals Listing § 12.05 and his anxiety disorder meets or equals Listing § 12.06. (*Id.* at 35.)

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a Listing. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). Plaintiff bears the burden of establishing that his impairments match a Listing or are equal in severity to a Listing. *See Naegele v. Barnhart,* 433 F.Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

Here, Plaintiff fails to meet his burden. Plaintiff fails to cite any evidence in the record to support his assertion his COPD and/or asbestosis, together with other impairments, equals Listing § 3.02. (Dkt. No. 15 at 33-34 [Pl.'s Mem. of Law].) Plaintiff also fails to show his learning disability or anxiety met a Listing. (*Id.* at 35-36.) Again,

Plaintiff fails to cite any evidence in the record to support this assertion.  As noted herein, the ALJ properly determined at step two Plaintiff's learning disability and anxiety were not severe impairments; therefore, the ALJ was not required to assess those impairments under the Listings.  *See* 20 C.F.R. § 404.1520(a)(4)(iii)(d).

Because Plaintiff provides no evidence in the record to support his conclusory assertion he equals Listing § 3.02, or meets Listing §§ 12.05 or 12.06, he fails to meet his burden.  Therefore, it is recommended that the ALJ's step three determination be upheld.

### C.  The ALJ's Step Four Determination

#### i.)    Treating Physician Rule

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c).  " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' "  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' "  *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

Additionally, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *report and recommendation adopted*, 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

Plaintiff appears to argue the ALJ failed to afford a statement by nurse practitioner Sarah Howell controlling weight. (Dkt. No. 15 at 22 [Pl.'s Mem. of Law].)

First, the ALJ did not have before her at the time of her decision Nurse Howell's statement. (*See* T. 29-33.) At the hearing Plaintiff's counsel stated that he was not aware of any additional evidence that he wished to submit. (T. 37.) On December 2, 2016, one month after the ALJ's written decision, Nurse Howell completed a form for the New York State Department of Motor Vehicles. (T. 707.)[3] Plaintiff first submitted Nurse Howell's statement to the AC. (T. 1-5, 266, 706-707.) Therefore, Plaintiff's contention the ALJ failed to properly assess Nurse Howell's statement is without merit because the ALJ never had the statement.

---

[3]     Nurse Howell checked the box indicating Plaintiff was "permanently disabled" due to his COPD, she checked the box "uses portable oxygen," and the box "unable to walk 200 ft. without stopping." (T. 707.)

Plaintiff does not argue the AC failed to properly assess the statement, nor does Plaintiff argue Nurse Howell's statement would have altered the ALJ's determination[4]. The AC stated they reviewed the additional evidence and the information did not provide a basis for changing the ALJ's decision. (T. 2.) However, "assuming that the Appeals Council erred, there was nevertheless no reasonable possibility that consideration of [the] report would have altered the ALJ's decision, because the evidence that [Nurse Howell] adduced was not materially different from that which was already before the ALJ and the vocational expert when they reached their conclusions." *Suttles v. Colvin*, 654 F. App'x 44, 47 (2d Cir. 2016). For the reasons further outlined

---

[4] The AC is obligated to consider "new and material evidence." 20 C.F.R. §§ 404.970(b), 404.1470(b). New evidence is "material" if it is: "(1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative." *Pollard v. Halter,* 377 F.3d 183, 193 (2d Cir. 2004). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Pollard,* 377 F.3d at 193. Such evidence cannot be summarily deemed irrelevant simply because it was generated after the ALJ rendered a decision. *Id.* at 193-194.

"[N]ew evidence submitted to the [AC] following the ALJ's decision becomes part of the administrative record for judicial review when the [AC] denies review of the ALJ's decision." *Perez v. Chater,* 77 F.3d 41, 45 (2d Cir. 1996). "The only limitations stated in [20 C.F.R. §§ 404.970(b) and 416.1470(b)] are that the evidence must be new and material and that it must relate to the period on or before the ALJ's decision." *Perez,* 77 F.3d at 45.

Once evidence is added to the record, the AC must then consider the entire record, including the new evidence, and review a case if the "administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1470(b). If the AC denies review of a case, the ALJ's decision, and not the AC's decision, is the final agency decision. *See Perez,* 77 F.3d at 44. When the AC denies review in a case, the review focuses on the ALJ's decision. *Lesterhuis v.Colvin,* 805 F.3d 83, 87 (2d Cir. 2015); *see* 42 U.S.C. § 405(g) ("Any individual, after any *final decision* of the Commissioner ..., may obtain a review of such decision by a civil action....").

A district court's review is based on the entire administrative record, including any new evidence submitted to the AC following the ALJ's decision. *See Perez,* 77 F.3d at 45. Thus, as in this case, when the AC denies review after considering new evidence, the court "simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Id.* at 46; *Lesterhuis,* 805 F.3d 87.

herein, Nurse Howell's statement did not warrant "controlling weight" and would not have altered the ALJ's decision.

Plaintiff properly recognizes that a nurse practitioner may not determine the existence of an impairment, but may be relied on to support the severity of an impairment.  (Dkt. No. 15 at 19 [Pl.'s Mem. of Law]); *see* 20 C.F.R. § 404.1513(d). Plaintiff then attempts to establish that findings of non-acceptable medical sources are medical opinions and thus subject to the treating physician rule in 20 C.F.R. § 404.1527(c).  (Dkt. No. 15 at 19-20 [Pl.'s Mem. of Law].)[5]

As an initial matter, in support of his argument that non-acceptable medical source opinions are medical opinions subject to the treating physician rule, Plaintiff omits a relevant portion of the Regulation.  Plaintiff contends 20 C.F.R. § 404.1527(a)(2) states:

> [e]vidence that you submit or that we obtain may contain medical opinions. Medical opinions are statement from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical and mental restrictions.

(Dkt. No. 15 at 20 [Pl.'s Mem. of Law].)  With the omitted portion, the Regulation states:

> [e]vidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from *physicians and psychologists or other acceptable medical sources* that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

---

[5]    Plaintiff cites to the "treating physician rule" located in the Regulations at 20 C.F.R. § 404.1527(d) throughout his brief.  (*see generally* Dkt. No. 15 [Pl.'s Mem. of Law].)  At the time of his application the "treating physician rule" was located at 20 C.F.R. § 404.1527(c).  The change was effective March 26, 2012, due to a regulatory change that did not affect the substantive language of that section of the Regulation.  77 Fed. Reg. 10651-10657 (Feb. 23, 2012).  Effective March 2017 the Regulations were again changed.

15

20 C.F.R. § 404.1527(a)(2)(emphasis added).  The treatment of medical source statements under the rule is clearly limited to acceptable medical sources.

To the extent Plaintiff seeks to apply 20 C.F.R. § 404.1527 to Nurse Howell's statement, such argument must fail because Nurse Howell is not an acceptable medical source and thus not a "treating source" subject to the treating physician rule.  As stated by the Second Circuit, an ALJ is "free to consider" statements of other sources, such as nurse practitioners, in making her overall assessment; however, "those opinions do not demand the same deference as those of a treating physician."  *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008); *see LaValley v. Colvin*, 672 F. App'x 129, 130 (2d Cir. 2017) (argument that a nurse practitioner is a treating source within the meaning of the Social Security Administrations regulations is incorrect because a nurse practitioner is not an acceptable medical source); *see Bushey v. Colvin*, 552 F. App'x 97 (2d Cir. 2014) (ALJ properly refused to afford controlling weight to opinion of a non-acceptable medical source); *see Hance v. Colvin,* No. 8:15-CV-1362, 2017 WL 1034721, at *5 (N.D.N.Y. Mar. 15, 2017) (counsel makes a strikingly similar legal argument which the Court rejected because nurse practitioners are not acceptable medical sources and therefore not subject to the treating physician rule under 20 C.F.R. § 404.1527).

Plaintiff further asserts there is no evidence in the record to contradict Nurse Howell's statement Plaintiff is unable to walk 200 feet.  (Dkt. No. 15 at 22 [Pl.'s Mem. of Law].)  Plaintiff's assertion is incorrect.  Here, the ALJ relied on substantial evidence in the record indicating Plaintiff was capable of performing the walking requirements of light work despite his COPD and Nurse Howell's statement would not have altered this determination.  Indeed, Plaintiff informed

his treating pulmonologist Sablieli Kabeli M.D., F.C.C.P., A.B.S.M., he walked three to four miles a day, with difficulty walking uphill.  (T. 353.)  On another occasion Plaintiff informed Dr. Kabeli he was doing "quite well" with "some shortness of breath on exertion, but at his own pace can walk anywhere he wants to."  (T. 355.)  Dr. Kabeli observed Plaintiff ambulated without assistance and encouraged Plaintiff to walk regularly and go up and down the stairs in his home ten times a day.  (T. 354, 357, 360, 362, 364, 466, 581, 590.)  In fact, Dr. Kabeli stated Plaintiff "needs to walk on a regular basis to improve his respiratory endurance."  (T. 592.)  Therefore, substantial evidence in the record supported the ALJ's determination Plaintiff could perform the walking requirements of light work and Nurse Howell's statement would not have altered the ALJ's determination.

Plaintiff also notes Dr. Kabeli stated "if [Plaintiff] is unable to go back to work, unable to achieve the heavy physical requirements of his job, he may need to look either into an alternative job or even possible disability."  (Dkt. No. 15 at 22 [Pl.'s Mem. of Law].)[6]  Plaintiff then states "[t]here are records from Dr. Anene regarding [Plaintiff's] lung surgery in 2015."  (*Id.*)  However, Plaintiff does not contend the ALJ failed to properly assess these statements or make any other legal argument concerning these statements.  (*Id.*)  Because the doctor's statements appear within Plaintiff's overall argument that the ALJ failed to properly apply the treating physician rule, it is assumed Plaintiff is arguing the ALJ failed to properly assess Dr. Kabeli's statement and Dr. Anene's treatment

---

[6]    Of note, Dr. Kabli stated in May of 2013, Plaintiff could return to work as a carpenter, but should wear a mask.  (T. 364.)

notes.  However, neither Dr. Kabeli's statement nor Dr. Anene's treatment notes amount to a medical source opinion.  Neither doctor provided an opinion regarding Plaintiff's ability to perform work related functional requirements.  In addition, Plaintiff has failed to show how Dr. Kabeli's statement is inconsistent with the ALJ's RFC determination.

Overall, Nurse Howell's statement was not part of the record at the time the ALJ made her determination.  To the extent Plaintiff argues Nurse Howell's statement would have altered the ALJ's determination, Plaintiff's argument fails.  Here, substantial evidence in the record supported the determination Plaintiff was capable of performing the walking requirements of light work.

In addition, although Plaintiff notes statements made by providers and treatment notations in the record, he fails to outline any specific legal error.  The ALJ provided a short, but accurate, summary of Plaintiff's medical conditions and treatment.  (T. 25.)  There is no indication from a review of the record that the ALJ mischaracterized or misstated evidence.

In addition, although Plaintiff appears to assert the ALJ failed to properly weigh medical opinion evidence in the record, Plaintiff does not argue the ALJ's RFC determination was the product of legal error or not supported by substantial evidence.  Plaintiff bears the burden at steps one through four of the sequential process and has failed to meet his burden.  See *Taylor,* 32 F. Supp. 3d at 265 (N.D.N.Y. 2012); *see also* 20 C.F.R. § 404.1512(a).  Therefore, it is recommended that the ALJ's treatment of the medical evidence in the record be upheld.

### ii.) Credibility Determination

In determining a plaintiff's RFC, the ALJ is required to take plaintiff's reports of pain and other limitations into account, but is not required to accept plaintiff's subjective complaints without question.  *Genier,* 606 F.3d at 49.  " 'An [ALJ] may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.' " *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).

The Second Circuit recognizes that " '[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,' " and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.' " *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Here, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, his statements

concerning the intensity, persistence and limiting effects of those symptoms was not entirely consistent with the medical evidence and other evidence in the record.  (T. 25.)

Plaintiff contends the ALJ erred in her credibility determination for several reasons.  First, Plaintiff argues the ALJ erred in "not crediting [Plaintiff's] testimony that he has difficulty reading and writing" and his special education.  (Dkt. No. 15 at 27-28 [Pl.'s Mem. of Law].)  Second, Plaintiff asserts the ALJ failed to take into consideration Plaintiff's long work history.  (*Id.* at 28.)  Third, Plaintiff asserts the ALJ erred in relying on "one erroneous notation" in the record that Plaintiff could walk three to four miles a day.  (*Id.* at 28.)  Fourth, Plaintiff asserts the ALJ erred in relying on Plaintiff's "routine and conservative" treatment.  (*Id.* at 29.)  Lastly, Plaintiff argues he is disabled by his non-exertional limitation of pain.  (*Id.* at 34-35.)

Here, the ALJ adequately explained her reasons for finding Plaintiff had diminished credibility.  First, as stated herein, the ALJ properly determined Plaintiff did not have a severe impairment of learning disability.  The ALJ reasoned that although Plaintiff alleged he had difficulty reading and writing, school reports indicated he was absent a significant amount of time which "could" explain his status as a poor student and Plaintiff completed and signed his paperwork for his disability application.  (T. 26.)  The ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record."  *Genier,* 606 F.3d at 49.  At the hearing the ALJ asked Plaintiff if he was able to read and Plaintiff responded "[n]ot good.  I can read little words but that's about it."  (T. 42.)  When asked if he could read a newspaper, Plaintiff answered "no," when asked if he could read a street sign, Plaintiff answered "yes."  (*Id.*)

Plaintiff testified at the hearing: "I can't read and write, I mean I was always doing bull work, you know, a laborer."  (T. 46.)  In addition, Plaintiff asserts in his brief he received special education services.  However, when asked at the hearing if he was in special education, Plaintiff replied "I had tutors for reading."  (T. 42.)

In addition, the education records provided by Plaintiff do not indicate whether he was in regular education or special education classes.  (T. 259.)  Contrary to Plaintiff's assertion, the ALJ did credit Plaintiff's education.  The ALJ properly determined, in assessing Plaintiff's vocational factors, that he had a "limited education[7]."  (T. 27.) Therefore, because it is the function of the ALJ, not reviewing courts, to resolve evidentiary conflicts and appraise the credibility of Plaintiff the ALJ properly concluded Plaintiff was not illiterate and had a limited education.  *See Schlichting*, 11 F. Supp. 3d at 206.

Second, the ALJ did not err in failing to find Plaintiff credible based on his "good work history."  Although it is true that "a good work history may be deemed probative of credibility," it remains "just one of many factors" appropriately considered in assessing credibility.  *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (citing *Schaal,* 134 F.3d at 502).  The ALJ relied on other substantial evidence in the record in determining Plaintiff was not fully credible.  The ALJ's decision not to rely exclusively on Plaintiff's alleged good work history was therefore not erroneous.  *See Wavercak v. Astrue,* 420 F. App'x. 91, 94 (2d Cir.2011) ("That Wavercak's good work history was not specifically

---

[7]  Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.  20 C.F.R. § 404.1564(b)(3).

referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination.").

The ALJ properly relied on Plaintiff's alleged activities of daily living and did not misstate evidence in the record. As outlined herein, Plaintiff informed his treating pulmonologist he walks three to four miles a day, with difficulty walking uphill; he informed a provider that he had "some" shortness of breath, but could walk anywhere at his own pace; and providers encouraged Plaintiff to walk regularly. (T. 353, 354, 355, 357, 360, 362, 364, 466, 581, 590.) At the hearing Plaintiff testified he could walk "maybe 15 steps" before he would have to stop and take a break. (T. 46.) The ALJ did not, as Plaintiff asserts, improperly rely on one erroneous treatment notation. Here, the ALJ determined that Plaintiff's statement he is unable to walk was inconsistent with substantial evidence in the record. Therefore, the ALJ did not err in her assessment of the record in this regard.

Plaintiff's assertion that the ALJ erred in relying on his conservative and routine care is without merit. (Dkt. No. 15 at 29 [Pl.'s Mem. of Law].) Plaintiff asserts, again without citation to the record, that the record contradicts the ALJ's claim because he received "regular treatment," was on "numerous medications," and had "major surgery." (*Id.*) Here, the ALJ properly assessed Plaintiff's treatment as a factor in her credibility determination. *See* 20 C.F.R. § 404.1529(c)(3)(4), (5). The ALJ properly noted Plaintiff's medical treatment, including his medications, and lung surgery. (T. 25.) Plaintiff fails to point to any evidence to substantiate his subjective allegations. Therefore, Plaintiff fails meet his burden.

Plaintiff's conclusory allegations that he is disabled due to back pain and symptoms from diabetes are also without merit. (Dkt. No. 15 at 34, 36 [Pl.'s Mem. of Law].) Plaintiff fails to establish any legal error and fails to point to any evidence in the record to support his allegations. Plaintiff argues, in general, the ALJ failed to consider his impairments in combination when determining whether he was disabled. (Dkt. No. 15 at 30-36 [Pl.'s Mem. of Law].) The ALJ expressly recognized that she must consider impairments in combination, her decision discusses all of Plaintiff's impairments (severe and non-severe), and the ALJ noted she relied on a "totality of the medical evidence" in formulating her RFC. (T. 23, 25-26.) There is no reason to suspect that the ALJ considered Plaintiff's impairments in isolation. *See LaValley,* 672 F. App'x at 130.

Overall, the ALJ properly assessed Plaintiff's credibility. In making her determination, the ALJ relied on the Regulations as outlined in 20 C.F.R. § 404.1529. The ALJ cited substantial evidence in the record to support her credibility determination. (T. 25-26.) Given the "sharply limited scope of [] review" it is recommended that the ALJ's credibility determination be upheld. *Wright v. Berryhill*, 687 F. App'x 45 (2d Cir. 2017).

### D. The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to

the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404,

Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid").  *See Bapp v. Bowen,*

802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if

a non-exertional limitation "has any more than a 'negligible' impact on a claimant's

ability to perform the full range of work."  *Selian v. Astrue,* 708 F.3d 409, 421 (2d

Cir.2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir.2010)).  A non-exertional

impairment is non-negligible "when it ... so narrows a claimant's possible range of work

as to deprive him of a meaningful employment opportunity."  *Zabala,* 595 F.3d at 411.

Whether VE testimony is required must be determined on a "case-by-case basis."  *Bapp*

802 F.2d at 605-606.  Further, "the mere existence of a non-exertional impairment does

not automatically require the production of a vocational expert nor preclude reliance on

the [Grids]."  *Id.* at 603.

At the hearing the ALJ presented a hypothetical to a vocational expert ("VE")

containing Plaintiff's vocational factors and RFC and asked the VE if such a person

could perform work that existed in significant numbers in the national economy.  (T. 64-

65.)  The VE testified that such a person could perform work as a sales attendant (DOT

299.677-010), cleaner (DOT 323.687-014), and bagger (920.687-014).  (*Id.*)

Plaintiff's argument regarding the ALJ's errors at step five is merely repetitive of

Plaintiff previous arguments and unpersuasive.  Specifically, Plaintiff asserts he could

not perform the occupations provided by the VE because he could not meet the

reasoning and language requirements; he could not be exposed to chemicals and

fumes; he could not perform the exertional requirements; and he could not work

outdoors.  (Dkt. No. 15 at 38 [Pl.'s Mem. of Law].)  For the reasons already stated herein, it is recommended that the ALJ's step two, step three, and step four determinations be upheld.

Because there was no error in the ALJ's RFC assessment, the ALJ did not err in posing a hypothetical question to the VE that was based on her step four assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553-1554 (2d Cir.1983) (approving a hypothetical question to a VE that was based on substantial evidence in the record). Therefore, it is recommended that the ALJ's step five determination be upheld.

### E.  Evidence Submitted to this Court

Plaintiff submitted additional evidence to this Court.  (Dkt. No. 15, Addendum A and B.)[8]  Plaintiff submitted a medical source statement dated April 24, 2017 completed by Nurse Howell and Maurice Racine, M.D.  (Dkt. No. 15, Addendum A.)  Plaintiff also submitted a subsequent Notice of Disapproval Claim letter dated August 18, 2017.  (*Id.*, Addendum B.)

The Court may order additional evidence be taken before the Commissioner through sentence six of 42 U.S.C. § 405(g); however, it is permitted to do so "only upon a showing that there is new evidence which is material and [] there is good cause for the failure to incorporate such evidence in a prior proceeding."  42 U.S.C. § 405(g) (sixth sentence).  The Second Circuit in *Tirado v. Bowen* addressed the situation where a plaintiff presented new evidence at the court level in support of her claim after issuance

---

[8]    Under General Order 18, when plaintiffs request remand based on new and material evidence, plaintiff must file a motion for remand pursuant to sentence six of 42 U.S.C. 405(g).  N.D.N.Y. General Order No. 18 at 5.  However, Plaintiff requested, and received, permission to file additional evidence together with his brief requesting remand under sentence four of 42 U.S.C. 405(g).  (Dkt. Nos. 8,9.)

of the Commissioner's final decision.  842 F.2d 595 (2d Cir. 1988).  The Court

recognized plaintiffs ordinarily should have but one opportunity to prove entitlement to

or eligibility for benefits, otherwise "disability administrative proceedings would be an

unending merry-go-round with no finality to administrative and judicial determinations."

*Tirado*, 842 F.2d at 596.  The Court noted the need for an exception to the process

when a plaintiff's medical condition may not be fully diagnosed or comprehended at the

time of plaintiff's administrative hearing.  *Id.*

Accordingly, the *Tirado* Court looked at the provision of sentence six under 42

U.S.C. § 405(g) regarding the submission of additional evidence, and broke down its

components into a three-prong standard.  842 F.2d at 597(citations omitted); *see Lisa v.

Sec'y of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991) (applying *Tirado's*

three-part analysis to new evidence introduced for the first time at the district court).

First, the plaintiff must show that the proffered evidence was "new" and not merely

cumulative of evidence already in the record.  *Id.*  Second, the plaintiff must show that

the proffered evidence is "material, that is, both relevant to the [plaintiff's] condition

during the time period for which benefits were denied and probative."  *Id.*  Third, the

plaintiff must show good cause for his failure to present the evidence earlier.  *Id.*  To do

so, the plaintiff must adequately explain his failure to incorporate the proffered evidence

into the administrative record.  *Lisa v. Sec'y of Health and Human Servs.*, 940 F.2d at

45.  In short, under the new and material standard pursuant to sentence six of § 405(g),

this Court is limited to remanding only upon a showing by Plaintiff that any additional or

new evidence submitted for the first time satisfies the three criteria; i.e., the evidence

must be new, the evidence must be material, and Plaintiff must show good cause for not

submitting the evidence to the agency earlier.  *See Medina v. Apfel*, 2001 WL 1488284,

at *4 (S.D.N.Y. Nov. 21, 2001) (quoting *Shalala v. Schaefer*, 509 U.S. 292 (1993)).[9]

The courts in this jurisdiction have clearly explained that the burden is on the

plaintiff to show he meets the three-prong new and material evidence standard under

the sixth sentence of § 405(g).  *See, e.g., Overby v. Colvin*, 2013 WL 1814594

(N.D.N.Y. 2013); *Wright v. Astrue*, 2008 WL 5101934, at *2 (D. Conn. Nov. 3, 2008).

Here, Plaintiff merely states "[t]his evidence is new, material, and there is good cause

for not submitting it earlier."  (Dkt. No. 15 at 41 [Pl.'s Mem. of Law].)  Plaintiff provides

no explanation on which to base a good cause judgment.  Because Plaintiff has not

provided any explanation as to why the evidence was not submitted earlier Plaintiff fails

to meet the third requirement showing good cause.  *See  Doner v. Comm'r of Soc. Sec.*,

No. 8:16-CV-0883, 2017 WL 3172419, at *4 (N.D.N.Y. July 25, 2017) ("As this Court

can find no suggestion of good cause in the record, and Plaintiff has not provided any

explanation in his memorandum, Plaintiff has not met the third requirement to show that

remand is warranted for consideration of this evidence."); *see Overby v. Colvin*, No.

1:12-CV-663, 2013 WL 1814594, at *5 (N.D.N.Y. Apr. 4, 2013), *report and*

*recommendation adopted*, No. 1:12-CV-663, 2013 WL 1808020 (N.D.N.Y. Apr. 29,

2013) (sentence six remand denied because plaintiff "offers no other explanation as to

---

[9]        The Supreme Court has made clear that Congress expressly delineated sentence four
remands from sentence six remands, pointing to the Senate Report accompanying the amendments
explaining that "[t]he bill would continue the provision of present law which gives the court discretionary
authority to remand cases to the [Commissioner], but adds the requirement that remand for the purpose
of taking new evidence be limited to cases in which there is a showing that there is new evidence which is
material and that there was good cause for failure to incorporate it into the record in a prior proceeding."
*Melkonyan v. Sullivan*, 501 U.S. 89, 100-101 (1991) (quoting S. Rep. No. 96-408, pp. 58-59 (1979)
(expressing concern about increasing remands to consider new evidence)).

why the now-proffered records were not timely submitted during the administrative proceedings, he fails to carry his burden to show good cause.").

Regarding Plaintiff's subsequent SSI application, Plaintiff's argument also fails. As an initial matter, Plaintiff states in his brief Addendum B contains a determination granting his subsequent claim for benefits under Title XVI of the Social Security Act ("SSI benefits") as of April 4, 2017.  (Dkt. No. 15 at 41-42 [Pl.'s Mem. of Law].) However, the only statement contained in Addendum B is the Notice of Disapproved Claim under Title II of the Social Security Act ("SSD benefits").  (Dkt. No. 15, Addendum B.)

Regardless, a finding that Plaintiff was disabled after the ALJ's unfavorable decision (and during which time Plaintiff's age category changed) "says little" about whether Plaintiff was disabled at the time period relevant here and "any inference that can be drawn is too weak to displace the substantial evidence supporting the ALJ's determination."  *Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014) (citing *Baladi v. Barnhart,* 33 F. App'x. 562, 563-564 (2d Cir. 2002)); *see Caron v. Colvin*, 600 F. App'x 43, 44 (2d Cir. 2015) (a subsequent finding of disability "is not itself evidence of disability but, rather, a conclusion based on evidence"); *see Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012) (the fact that two ALJs may permissibly reach different conclusions is not probative of anything).  Therefore, it is recommended that Plaintiff's request to remand, for the ALJ to consider a subsequent approval of application, be denied.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:    June 6, 2018

William B. Mitchell Carter
U.S. Magistrate Judge

29